Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning. Welcome to the last day of our session. Judge Newsom, Judge Choflat and I are very happy to have you with us. We were supposed to be in Judge Choflat's neck of the woods in be able to return to our normal course of business soon. In the meantime, thank you all for being here. We really do appreciate it. We don't have the lighting system, obviously, but we do have a clock at the corner of the screen and the clock will tell you how you're doing with your time. And Valerie, as our courtroom deputy, will let you know orally when you've got two minutes left of your argument time. If we take you beyond the time, don't worry, you're on our time and not yours. And we're ready to start with our first case, which is number 19-14381, United States v. Antonio Gonzalez. Before you begin, Ms. Samuels-Parmer, I want to recognize that you're a court appointed for Mr. Gonzalez and on behalf of the court, we want to thank you for your service to him and to us. We really do appreciate it. Thank you, Your Honor. Whenever you're ready. May it please the court, Mari-Louise Parmer appearing on behalf of the appellant Antonio Gonzalez. Mr. Gonzalez argued two-fold that the district court erred in determining that his 57-month revocation sentence for violation of his supervised release was not covered under the First Step Act. And secondly, that the court should have modified his sentence because it now exceeded the statutory maximum of 36 months for a Class B felony. The government, in its initial brief, conceded for the first time that the First Step Act applies to a revocation sentence. So I would like to focus my argument on the court's alternative ruling at the second step, which the government now argues cures the defect in the eligibility determination, while at the same time arguing that the error in the eligibility determination is fatal to the district court's ruling. And subsequent to the closing of briefing, the Seventh Circuit issued an opinion in Korner, United States versus Korner, which is instructive to this court. And while not squarely argued exactly the way Korner was argued in my brief, either the initial brief or the reply brief, I did submit Korner as supplemental authority. It was issued in July. The briefing in this case closed in January of 2020. In Korner, the Seventh Circuit held that the district court abused its discretion because it failed to determine or calculate the new sentencing guidelines that Korner was facing. And the Korner reason, the court in Korner reasoned that the First Step Act directs courts to refer to the statutory penalties imposed by the Fair Sentencing Act. That was not done by the district court here. The First Step Act, by its plain text, requires a complete review. And the district court below, believing perhaps, we know that the district court believed that the First Step Act did not apply. That was the basis of its ruling. But it did throw in this alternative ruling. But Mr. Can I ask you, this is Judge Newsom. Can I ask you a question? So to the extent that Korner says, and you've said here that the First Step Act in sub C, as I recall, requires a complete review of the motion on the merits. If you look carefully, doesn't the act really just say that in the event that a First Step Act motion is not subject to a complete review on the merits, then you get sort of a second shot. It doesn't really tell you how the first motion has to be reviewed, does it? It just tells you the consequences of the failure to review it that way in the second round. I would respectfully disagree, Your Honor. The language that you're referring to, you don't get a second round if there was a complete review. That's how I read that. That's how I read it too. Yeah, that's how I read it too. I guess I'm just saying, though, I don't think that that logically means that the first round has to be reviewed or has to be subject to a complete review on the merits. It just means that if it's not, then you get a second shot. And I disagree, Your Honor. I think that we have to give full meaning to the language in the First Step Act. Courts have to do that. And because the language says that there should be a complete review, that has to have some meaning. Otherwise, to interpret it the way that you're suggesting would mean that a defendant could file multiple times saying, I filed under the First Step Act, but you didn't give me a complete review, so I get to file again. And that couldn't possibly be the meaning. The meaning is that a court, in its first instance, has to give a complete review. And then the defendant can't keep coming back under the First Step Act saying, review me again, review me again. And policy reasons would also not support that ruling as well, or that determination as well. Ms. Palmer, do you read Korner as precluding alternative determinations under the First Step Act? I believe that Korner does not necessarily preclude that. But what Korner says is that you have to do this complete review, which includes comparing the statutory penalties and any resulting change to the statutory penalty. And that wasn't done here. But wasn't the district judge aware through the filings of what the reduced penalties would have been? Well, the government is arguing now that Mr. Gonzalez, that his current 57-month sentence doesn't exceed, is appropriate because he's still a Class A felony. Mr. Gonzalez has argued that he is now a Class B felony because he's not subject to the enhancement, that his state court conviction is not a qualifying predicate under the First Step Act. And none of that was evaluated by the district judge. He doesn't make any reference to that in his analysis. And so I think that Korner is instructive in that the district court, using discretion, decision to decline resentencing without considering the statutory parameters, runs afoul of congressional expectations. The court decided what to do without first or the district court. The government below argued the First Step Act didn't apply. The district court accepted that argument and then threw in a sort of a catch-all. And that bare-bones explanation that I wouldn't have done this because of his conduct really amounts to no explanation at all. And I think the difficulty for this court is because the district court's order so lacks in reasoning, in detailed reasoning of its thought process, that it would be difficult for this court to review, for example, whether or not the 57-month sentence exceeds the statutory guidelines, and whether or not that is in and of itself an abuse of discretion. The district court's order is short, but the district court did explain, and I'm looking at page one of its order, that while in prison for the underlying offense, Gonzalez's conduct involved drug offenses and numerous incidences of insubordination. Gonzalez's conduct while incarcerated and while in supervision demonstrates an unwillingness or an inability to abide by the law. And then in closing, the court says, even if Gonzalez were eligible, I would decline to reduce his term of imprisonment because of his continued lawless behavior. What else do we need a district judge to say? Well, under the First Step Act, we need the district judge to say, these are my new sentencing calculations, and I've taken into account the new sentencing calculations. There's a purpose behind the First Step Act and the Fair Sentencing Act that judges are to take into account because of the unfair application of the crack cocaine penalties. And so he has to look at the changes in his statutory penalties. His reasoning may very well be justified on remand, and then that would be a question for this court again. Certainly, the court can take into account Mr. Gonzalez's conduct, but that can't be the only basis because under the First Step Act, he has to look, a district court judge needs to look at the differences in the statutory penalties. And there's been no determination here of this issue of whether the new sentence, the 57-month sentence exceeds the statutory maximum for a class B felony. And so we don't know that the district court considered that. Was there any dispute between the parties as to what the new guideline calculations would be? That was never really addressed. The government response focused primarily on the issue of whether the First Step Act applied, arguing it didn't apply. And there was no detailed explanation. But as we stand here today, the government is arguing that Mr. Gonzalez is wrong about his calculation and that he falls under a class A felony. And that's their argument today. So Mr. Gonzalez argued below that this was exceeding the statutory max. The judge in his order does not address anything about the statutory max other than to know that this is what Gonzalez has argued. And so the alternative ruling is insufficient to cure the defect in the initial ruling. And I see my time is about to expire. Okay. Thank you very much, Ms. Palmer. You've saved your time for rebuttal. Ms. Tiffin. Good morning. May it please the court, Don Tiffin on behalf of the United States. I'd like to start by clarifying exactly why there is no change to Mr. Gonzalez's penalties that are applicable to him. His arguments seem to all spring from that point. And it is a point on which I don't believe there is any room for reasonable debate. Mr. Gonzalez was subject to a sentence, a very particular sentence back in 2006, by virtue of the Chapter Enhancement that required the United States to show a qualifying prior conviction for a drug felony. Now, many years later, 12 years later, the First Step Act change what could qualify for that enhancement. It became a serious drug felony for which his 2004 simple possession conviction out of the state of Florida would not have qualified. However, that modification was not made retroactive to people like Mr. Gonzalez, who had already been sentenced years before. It was applicable only from that point forward and to defendants who had already committed their offenses but had not yet been sentenced. Mr. Gonzalez falls well outside that category of people. So what his applicable statutory penalties were before the passage of the today. So there was no change for the court to consider. Could I interrupt you for a second? You know, I think, you know, speaking only for myself, that there's nothing wrong with a district judge providing an alternative basis for a decision, including in a case like this one. But that alternative ruling and affirming on that alternative ruling is a lot easier a lot less difficult when the parties and the court agree as to what the revised range would be if a defendant were eligible. But here, both in the district court and now on appeal, you've you've taken the position that essentially that nothing changed with the First Step Act with regards to Mr. Gonzalez. And so given that, as a premise, and given that the district court didn't set out what the new range would be under the First Step Act, how can we have confidence that the district court understood its discretion? Well, what we know from the court's order was nothing about a change or even a lack of change regarding the Fair Sentencing Act's change in statutory penalties as applied to Mr. Gonzalez informed its discretionary decision. In other words, its determination to not grant a sentence reduction here was totally independent of the eligibility determination. The court focused, its order focused on Mr. Gonzalez's many and varied infractions while he was incarcerated, his many and very technical violations while on supervised release, and last but certainly not least, his substantive new law offenses that included powder cocaine, crack cocaine, and even a firearm. That was the deciding factor for the court electing to not grant the requested relief. It, again, was independent of the eligibility or non-eligibility finding, of course, here for purposes of exercising its discretion, the court did assume eligibility. But you're saying assume eligibility, but how do we know the district court knew what that eligibility meant if you argued below that nothing changed? In other words, it's one to say the district judge understood general eligibility, but if you thought that it only changed by a couple of months and Mr. Gonzalez thought that it changed by 48 months, that'd be a very different version of eligibility. How do we have any confidence that the district court understood what Mr. Gonzalez was requesting and the range of its discretion given your position below? Well, in a very technical sense, Mr. Gonzalez was requesting a complete vacation of his sentence. He was asserting that he had been sentenced above the what he was asserting applicable penalty range for his revocation sentence of 36 months. That wasn't correct. It was six years and he had been sentenced on that revocation to a high-end guideline sentence of 57 months. But I think here, I want to reiterate what I've already said, which is in this case in particular, reading the court's order, we know that based on those factors, it did not matter what the change was going to be. There was some really strong language in this order. The judge said that Mr. Gonzalez had demonstrated either an unwillingness or an inability to follow the law. And that really says something here. We don't get that in every order where the court declines a sentence reduction based on post-incarceration or bad behavior, if you will, on supervised release. So the court here was adamant, we know from the language of the order, that Mr. Gonzalez did not warrant the judicial grace that the First Step Act provides eligible defendants. I'll just take a note here to discuss Corner a bit. The panel has already made some of the points that I wanted to about that case, but I'll extend it a little bit. Certainly our position is that the Corner court got it wrong. But the reason is because it creates a procedure for First Step Act cases that the First Step Act itself does not require. And of course, I'm referring to Section 404C, which is a limitations clause for the First Step Act that tells us when a defendant cannot seek what amounts to a successive First Step Act motion. But nowhere in there does it say that there is a requirement for a court reviewing such a motion to first make an eligibility determination or that an incorrect eligibility determination, based on any theory, cannot be cured by the proper exercise of the court's discretion. We've got to write an opinion in this case one way or the other. So let me play devil's The district judge in this case, so let me turn this case into a different one and give you a hypothetical. The district court in this case enters a one-line order saying motion for a sentence reduction under the First Step Act denied. What's the result on appeal? Well, Your Honor, there we wouldn't know exactly how and why the court had exercised its discretion. So I think that probably would not be enough. This court doesn't need to require an eligibility finding at the start, but it does need to know why the court declined to exercise its discretion. But what I would say, Your Honor, is that this court should say, should certainly adopt the that a district court who's reviewing a First Step Act motion need not find eligibility at the start before it can find its, excuse me, properly exercise its discretion to deny a sentence reduction under the First Step Act. This court does that in all kinds of cases every day. And if the court were to adopt the reasoning of Korner, I think the practical effect would be that First Step Act cases, in such cases, a district court would be more constrained to exercise its discretion than it would, say, in an original sentencing. And that doesn't make sense. Why? Well, because we would be saying, the court in Korner said that not only do things have to be done in a certain order, but that certain things also have to be considered, like the difference in statutory penalties that would be applicable to a defendant pursuing the motion. But here, and here, the district court did not say what the Korner court says must be said in order to then move to its discretionary determination. I'm talking about the very plain language of Section 404. That is where the court gets its authority. And in Section 404C, on which Korner relied, we can't forget that it also says, nothing within this section shall be construed to require a court to grant relief under this provision. So the district court has said, nothing means nothing, which I think is actually a terrific tagline, because it really underscores the discretionary nature of First Step Act proceedings. And other... Ms. Tevin, let me interrupt, if I will. There are two problems that we have, traditionally, in reviewing district judge determinations discretionary calls. The first question we have as an institution is whether or not there's enough in the record and enough explanation that renders the decision reviewable. Do we have to guess at what went through the district judge's mind if it's not laid out on paper? That's the discretion is, are two issues. The first issue is, what was the law that the court was to apply? Did the court understand the law that governed the exercise of discretion? And if the court understood that, the next question is, and followed that law, the next question is whether or not there's a factual predicate sufficient to justify the discretionary call. So I think what Judge Jordan's question to you, in effect, was, you have to decide what this First Step Act application, it seems to me, is in the case. If it doesn't apply, then its rules of law do not apply. You follow me? I do. If it does apply, then what does it say? So my concern, we do affirm a lot of cases where the district judge makes an alternative holding. But in those cases, the judge lets us know that he understands what the rule of law is that the party is urging. You follow me? Yes, sir. Okay, so I speak for myself. In writing an opinion, we have to address those two things, sort of in the abstract. And then you plug this case into that review model. So what do we know from what the district judge said? He could say the First Step Act does not apply because. And so now I'm going to treat this as a reduction of sentence under the statute, under statute 3582. So what do we know from what he said that he understood? Yeah, well, let me start my answer by sort of reaffirming what a relatively unique posture Mr. Gonzalez is in in this case, because we know that most First Step Act movements are going to have an actual change in penalty, statutory penalties, had the first or the fair sentencing act been in effect at the time of their sentencing. Mr. Gonzalez is unique because he does not. He does not by virtue of that Chapter 851 enhancement from the conviction from 2004. So I think with those very specific facts set forth, when we view that in conjunction with the court's order in this case, were there that requirement to set forth what the actual penalty would be for the defendant, to the extent that the court here did not do that in its written order, the effect would be harmless. Because if this were to go back, we know what the penalties are. That's another argument altogether. Well, yes, I understand. I'll try to be more precise. I'll tell us he knew that it didn't do anything. And here's the framework in which I make the decision. You follow me? I do. I do. And again, it's there are just some quirks in this case that take it outside the realm of what the normal First Step Act case. But I think those quirks are some of those things in the written order. The question of how do we know that the court knew what penalties it faced? Candidly, Your Honor, we can't. You can finish. Thank you. We don't know from the order because the court did not directly and explicitly acknowledge what statutory penalties Mr. Gonzalez would face or not face had the Fair Sentencing Act been in effect at the time of his sentencing. Of course, our argument is there was no change. Nevertheless, when we read closely and we accept the court's proper exercise of its discretion in Step 2, which assumes eligibility in Mr. Gonzalez's favor, then we can understand that this court was not going to change, was not going to reduce Mr. Gonzalez's sentence regardless of any change in the statutory penalties that applied to him. So while Your Honor has asked some very specific and very well articulated questions, I think we have to consider the very specific facts in this case all together, all in conjunction with one another to arrive to the conclusion that this court properly exercised its discretion. The facts on which it based its decision to not grant a sentence reduction were amply supported by the record. And under the First Step Act, that is all that was required. And the court also let know by virtue of its strong language and by virtue of reliance on all of those critical facts from the record that a remand here won't change anything. It would still decline to grant Mr. Gonzalez a sentence reduction. Thank you. All right. Thank you very much, Ms. Palmer. You've got your four minutes of rebuttal. Thank you, Your Honor. Mr. Gonzalez's sentence did change under the Fair Sentencing Act as a Class A, regardless of whether the enhancement would apply, but which, of course, we argue it wouldn't apply, which goes exactly to the reason why it needs to go back to the district court, because we don't know whether or not the district court, knowing that the First Step Act reduced his abided by the maximum sentence, he gave Mr. Gonzalez a 57-month sentence, which was three months below the statutory maximum that he probably, that the district court probably thought he was facing. But his sentence was reduced under the, initially, his penalties of imprisonment on the violation of 21 U.S. Code 841B1A and the enhancement under 851 was 20 years to life, with 10 years of supervised relief, and then no more than five years imprisonment. Under the Fair Sentencing Act, it changed. He was at, under 841B1B and 21 United States Code 851, he was facing 10 years to life and eight years of supervised relief, and then Class A felony upon revocation, five years imprisonment, but then 851 enhancement, he doesn't have the qualifying offense. And I think, again, this goes back to the issue that Judge Joe Flatt pointed out. We just don't have enough in this judge's order to know what his reasoning was. We know he erred in the eligibility determination. We know that he didn't engage in a meaningful analysis of the statutory changes and didn't address important disputes by the parties. And so this, his order is not sufficient to be sustained and should be reversed so that the district court can make a full analysis. We just don't know what the district court could do. And there are many cases that are cited in the briefs where individuals have new law violations, lied to their probation officers, tested positive for drugs, but they still got a reduction. So Mr. Gonzalez's case is not outside the realm of where he wouldn't get a reduction because the policy behind the First Step Act is to level the playing field for those who have been sentenced for crack cocaine offenses. And so here we can't be sure that the comment tossed in for good measure, it didn't reflect the detailed explanation of the basis of the parallel result. Can I ask you a quick question? This is Judge Newsom, and I know that you don't have much time, so I'll try to be quick. A couple of questions just by way of analogy to the qualified immunity context, right? So the Supreme Court has basically encouraged lower courts in the qualified immunity context to skip the merits analysis and to go straight through the clearly established law prong of qualified immunity, if you're familiar with it. And so I'm wondering why that sort of rationale doesn't map on here. And likewise, if we faced a district court decision that said something like, there was no constitutional violation here, and in any event, and then kind of tossed in for good measure, in any event, it wasn't clearly established. Then if it came up to us on review, and we concluded that the district court was dead wrong on whether or not the Constitution had been violated, couldn't we nonetheless affirm on the ground that despite sort of having been conclusory about it, its determination that the law was not clearly established was correct? And what makes this so different? This is different because we don't have the, in your hypothetical, your honor, you indicate that the district court would have done an analysis of whether or not there was a constitutional violation sufficient to violate qualified immunity, or to exceed qualified immunity. But in this case, the judge didn't do that. I think that that's the issue here. He tosses in a comment about Mr. Gonzalez's behavior, which was not great. And nobody here is arguing that it's not great. But that can't be the only reason that he's denied the First Step Act, because the judge has to, look, there's a purpose to that statute, which talks about changing statutory penalties. And so if a judge doesn't engage in what the change in the statutory penalties are, then he's not really looking at the First Step Act. He's just doing a modification and denying a modification of sentence. And the First Step Act requires, I see I'm past my time, but you can continue answering the question. Thank you, your honor. And so the First Step Act requires this, this analysis. So in your hypothetical, the judge did really what he needed to do, but this judge did not do that in this instance. And so the court, I would respect, respectfully ask that the court remand so that the judge can make a fully informed decision of how he would treat this particular defendant, recognizing he has the authority, and then looking at the statutory penalties and seeing if the weighing of the statutory penalties in light of Mr. Gonzalez's conduct is something that he would change. And maybe he would give him the 36-month sentence or maybe a 33-month sentence. And so I would ask that this court remand. Thank you. All right. Thank you both very much. We really appreciate it.